# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)                                       **MDL NO. 2924**
**PRODUCTS LIABILITY**                                            **20-MD-2924**
**LITIGATION**

                                       **JUDGE ROBIN L. ROSENBERG**
                  **MAGISTRATE JUDGE BRUCE E. REINHART**

_____/

**THIS DOCUMENT RELATES TO ALL CASES**

## PRETRIAL ORDER #15
### Order on Procedures for Implementing Census

       At the Court's request, counsel for Plaintiffs and Defendants conferred to formulate an

initial census process to assist in overall effective case management and the orderly and efficient

progression of this proceeding. Jaime Dodge, Director of the Institute of Complex Litigation and

Mass Claims at Emory Law School, and Special Master in this MDL, provided guidance and

assistance to the parties in their negotiations to create a census process best situated to the unique

needs of this litigation. This Order governs the form and schedule for service of an Initial

Census Form ("ICF") for all cases filed in MDL No. 2924 as well as certain unfiled cases, and a

Census Plus Form ("CPF") for personal injury and medical monitoring cases in this MDL. In

addition, this Order provides for the creation of a voluntary Census Registry of potential unfiled

claims.[1]

---

[1] As it relates to the CFP or the Census Registry, all references to "cases" or "claims" in this Order apply only to cases or claims alleging personal injury or the need for medical monitoring from ingestion of Zantac and/or ranitidine. The Census Plus Form for plaintiffs alleging solely economic loss will be addressed in a subsequent order if it appears necessary as the case progresses; it is not presently contemplated that these plaintiffs will be eligible for participation in the Census Registry.

The parties have worked diligently together to create a census program that enables the parties and the Court to have a robust and timely understanding of the scope and size of the litigation relating to Zantac and/or ranitidine in order to facilitate early case management decisions that match the contemplated nature of the litigation. Counsel on both sides collaborated to create a unique mechanism to permit a more thorough census of filed cases and unfiled claims.

As detailed in this Order, the parties created a framework that provides for a two-step census process. The Initial Census will provide preliminary information on all filed claims, within 30 days of this Order. In addition, the Initial Census will provide the Court with select information regarding the nature of the full inventory of retained clients for each applicant for plaintiffs' leadership, to assist the Court in selecting a leadership team that can most adequately and effectively represent the interests of the array of plaintiffs in this matter.

The parties also provided for a second phase of the census, which will provide additional information to the Court via a CPF. This information may take longer to gather, and thus has been set for a second phase of collection to avoid delaying the selection of plaintiffs' leadership. The parties have agreed to a more robust CPF to be completed and submitted for all filed cases on a scheduled basis.

In addition, the parties have agreed to the creation of a voluntary opt-in Registry, which permits additional transparency for the Court and leadership counsel into the claims that are still being investigated and developed, and thus remain unfiled. Specifically, as to those cases and claims that are properly registered, the parties have provided for a joint and collaborative process for assisting retained counsel in the retrieval of selected medical and/or purchase records,

2

culminating in the creation of a robust database of information as to the alleged injuries and usage.

The parties contemplate that this census process will enable the parties and Court to have better information to target their resources toward an efficient management of this litigation.  In order to accomplish this objective, both parties have negotiated in good faith and made concessions for the benefit of the litigation as a whole.

The parties stipulate to the content and timing of the census process, and the Court hereby ORDERS:

Initial Census Form

1. *Filed Cases.* An Initial Census Form ("ICF"), attached hereto as Exhibit A, must be completed for every case that has, by 11:59pm ET on April 27, 2020, either been filed in or has been transferred to this MDL.  This includes both cases filed in this District prior to the creation of this MDL and cases direct filed since the MDL's creation, as well as all cases transferred to this Court (whether removed to this Court, transferred to this Court, or otherwise); hereinafter, the term "Plaintiff" refers to any and all named plaintiff(s) in cases within this MDL, regardless of where filed.

2. *Unfiled But Retained Clients of Leadership Applicants.*  Any attorney who has applied for a leadership position through appointment to the Plaintiffs' Steering Committee ("PSC") in accordance with Pretrial Order #1 is required to submit an ICF for his/her firm's entire inventory of cases.

   a. Counsel must submit an ICF for all individuals who signed a retainer agreement with the leadership applicant's firm before April 1, 2020.

b.  Counsel may voluntarily submit an ICF for individuals who retain the leadership
    applicant's firm on or after April 1, 2020, but are not required to do so if it is not
    possible to gather the required information by the census deadline.

3.  Plaintiffs shall submit the completed ICFs through the LMIExchange platform, according
    to submission guidelines to be provided through the vendor.

    a.  Data may be directly entered into LMIExchange or uploaded via spreadsheet.
        When counsel (or his/her designee) uploads an ICF via spreadsheet through the
        LMIExchange platform, it shall be clearly labeled "Initial Census Form."

    b.  Counsel shall choose the "Initial Census Form" submission option available
        through the LMIExchange platform and shall submit (via direct entry or
        spreadsheet upload) the client's ICF data under the client's case-specific docket
        number, for any case that has been filed in any court, in order to facilitate tracking
        of these cases.

    c.  For filed Plaintiffs and unfiled but retained clients, the identifying information
        and medical and other records provided will not be provided to any counsel other
        than the firm completing the ICF and any listed co-counsel.  The identifying
        information shall be used by the platform vendor only for the purpose of notifying
        counsel of potential duplicate representations and for aggregate data analytics.

    d.  In light of this restriction on the use of identifying information, the platform
        vendor shall provide a unique user identification number for each individual
        whose data is entered (whether it is a filed Plaintiff or unfiled but retained client).

4. *Deadlines.*

    a. All ICFs must be submitted by 3pm ET on April 30, 2020.  This deadline applies to both all filed Plaintiffs (pursuant to paragraph 1) and unfiled retained clients of leadership applicants (pursuant to paragraph 2).

    b. Any filed Plaintiff who does not submit an ICF as required by this Order, absent good cause shown, shall be subject to sanctions, up to and including dismissal of the case.  Counsel are therefore strongly advised to submit all ICFs by noon on April 29, 2020, if not sooner, to allow adequate time for any technical errors that may occur in bulk data uploads, system crashes, etc.

    c. The LMIExchange platform permits the entry of data for any retained client, and thus counsel are strongly encouraged to begin data entry upon notice of transfer of any case to this MDL, or in advance of filing for those cases that will be filed on or before April 27.

5. For filed cases, the ICF requires a Plaintiff to provide documentation regarding his/her medical diagnosis.  The Court anticipates that, because these cases already have been filed, many Plaintiffs and/or their counsel will have the relevant medical record(s) available to be provided with the ICF.  To the extent that the relevant medical record(s) have not yet been obtained and/or the Plaintiff has no documentation regarding the alleged injury or product use, the ICF requires the Plaintiff to provide a signed statement attesting to his/her claimed medical diagnosis and/or Zantac use.  Given commonly available technologies (scanning, texting of photos, etc.), the Court expects that most if not all Plaintiffs in this category should be able to provide such signed statements.  However, to the extent that any particular Plaintiff cannot do so in light of limitations caused by the current COVID-19

situation, he/she may provide an unsigned email confirmation to counsel attesting to the claimed medical diagnosis and/or Zantac usage. The Court has provided counsel with the option to attach a letter from counsel if even with these accommodations the Plaintiff is unable to provide any such documentation.

6. The ICF shall be deemed served on Defendants on the date it is made available to them electronically through the LMIExchange platform. No paper service will be permitted.

7. It is important that the Court have a complete and accurate census. The Court therefore requires completion of a certification by every law firm either completing an ICF and/or applying for leadership in this litigation, as follows:

    a. *Complete & Accurate Responses.* Every firm completing an ICF for any client as well as all firms whose attorneys are applicants for leadership/PSC appointments in this MDL shall provide a certification that (1) all responses provided in the ICF are accurate and correct to the best information and knowledge of the attorney and his/her firm, and (2) every client whose data was required to be submitted as part of the census process has submitted an ICF. If any firm cannot make this certification to the Court, an explanation shall be provided to the Court. A firm that is merely listed as co-counsel in a case (rather than the firm responsible for completing the ICF) need not provide a certification unless that firm has an attorney applying for leadership in this MDL.

    b. *Claimant Distribution.* To facilitate case management and contracting for services for the Registry, it would assist the Court to have the best estimate of either the number or percentage of claims held by each firm completing an ICF for any client and each leadership applicant attorney (whichever the attorney deems most

practicable) that will be: (a) entered in the Registry once it is open as an unfiled case, (b) have been or will be filed in the MDL (without prior use of the unfiled claims Registry), and (c) for which the firm has not yet made a determination as to whether the case will be filed in either the MDL or the Registry.  Every firm submitting a certification letter to the Court is requested to provide such a statement in their letter to assist the Court.  This information shall be submitted by all firms whose attorneys are applicants for leadership/PSC appointments in this MDL as part of their certification to the Court.

c.  *Additional Retained Clients.*  The Court encourages leadership applicants to use their best efforts to voluntarily submit initial census data for clients who retained the applicant's firm after the date of this Order but on or before April 27, 2020.  To the extent this is not feasible, the applicant shall include in the certification the number of clients who retained the applicant's firm during this period but did not submit an ICF.  Specifically, the attorney shall designate the number of retained clients who in their intake alleged: (1) cancer, (2) other physical injury (non-cancer), (3) medical monitoring (but no physical injury), (4) economic loss only (no physical injury or medical monitoring), or (5) do not know what injury the client is reporting.  Each retained client shall only be listed in one of those five categories, and the total number of retained clients not included in the census shall be listed as well.

d.  By 5pm ET on April 30, 2020, the certification shall be submitted as a single PDF letter attachment via email to zantac_mdl@flsd.uscourts.gov:

    i. All firms completing an ICF for one or more clients, but whose firm is not applying for a leadership role, shall submit a certification (or explanation of failure to provide such certification) and, if counsel is willing to assist the Court by doing so, an anticipated claimant distribution, as described above. If multiple attorneys from the firm were responsible for completion of the ICFs, only one letter should be submitted per firm.

    ii. All leadership applicants shall submit a certification (or explanation of failure to provide such certification), anticipated claimant distribution, and statement of additional retained clients through April 27, 2020 who have not completed an ICF.   Firms that have multiple applicants for a leadership/PSC position should submit one letter, which is approved and signed by all leadership/PSC applicants.  (In light of limitations caused by the current COVID-19 situation, separate signature pages may be attached if this is more practicable.)

<u>Census Plus Form</u>

1. All filed Plaintiffs in the MDL will be required, through counsel, to submit a completed Census Plus Form ("CPF"), attached hereto as Exhibit B, through the LMIExchange platform, according to submission guidelines to be provided by the vendor.  Plaintiff's counsel shall also upload with their CPF all documents responsive to the document requests contained therein.  The CPF shall also include a certification from the submitting Plaintiff, attesting to the accuracy of the submitted information under oath.

2. LMI will notify counsel of record when the CPF is available for completion on the LMIExchange platform, but by no later than May 1, 2020.  Counsel are encouraged to begin timely submitting their CPF as soon as practicable, not only to facilitate case management but also because completion of the CPF triggers eligibility for certain assistance with obtaining certain records (as described below in paragraph 1, under "Additional Terms").

3. If producing healthcare or other records (hereinafter "medical records") in conjunction with the CPF, Plaintiffs shall accomplish service exclusively by uploading those medical records through the LMIExchange platform.  No paper production or service shall be permitted.

4. Deadline for CPF Submission.

    a. *Cases Pending in the MDL on the Date of the Order Designating Appointment of the PSC.*  Within sixty (60) days from the date of the Order designating the appointment of the PSC, counsel to Plaintiffs in the MDL shall submit a completed CPF and also upload all documents responsive to the document requests contained therein.

    b. *Cases Filed After the Date of the Order Designating Appointment of the PSC.* Within sixty (60) days from the date of any new case being filed in or transferred to this MDL, Plaintiff's counsel shall submit a completed CPF and also upload all documents responsive to the document requests contained therein.

5. Plaintiffs with filed cases who fail to submit complete CPFs and accompanying documentation by the deadline will receive notice in accordance with details to be provided through the vendor.  Any Plaintiff in a filed case who does not timely cure an important

deficiency, absent good cause shown, may be subject to sanctions, up to and including dismissal of the case.

Census Registry

1. Plaintiffs' law firms that have clients with potential claims related to Zantac and/or ranitidine products whose cases have not yet been filed are encouraged to submit a completed CPF for each unfiled claim through the LMIExchange platform and become part of the Census Registry (hereinafter "Registry"). No Claimant is obligated to participate in the Registry. The term "Claimant" hereinafter refers to individuals who want to participate in the Registry, but who have not yet filed a lawsuit relating to the subject matter of this MDL in either state or federal court.

2. The CPF will be available for completion on the LMIExchange platform, by no later than May 1, 2020. Counsel are encouraged to begin timely submitting their CPF, not only to facilitate case management but also because completion of the CPF triggers eligibility for the Registry benefits, including the start of tolling and eligibility for certain records retrieval assistance.

3. Timing of Registration/ Registration Cutoff

   a. For Claimants who sign retention agreements prior to the Order designating the appointment of the PSC, the CPF must be submitted to LMIExchange within ninety (90) days from the date of the appointment of the PSC, in order to be eligible to participate in the Registry.

   b. For any Claimants who sign retention agreements after the Order designating the appointment of the PSC, the CPF must be submitted to the LMIExchange within

thirty (30) days from the end of the quarter within which the Claimant retained counsel to be eligible to participate in the Registry.

4. Claimants shall upload with their CPF the documents they have collected that are responsive to the document requests contained therein. For those Claimants who request documents through the Registry vendor, such documents shall be provided by a later date to be agreed by the parties and Special Master Jaime Dodge. The CPF shall also include a certification from the Claimant, attesting to the accuracy of the submitted information under oath. Claimants who complete the CPF pursuant to this paragraph will be deemed enrolled in the Registry. For purposes of the Registry, cases that could be properly filed in either federal or state courts can be registered.

5. Participation in the Registry will toll the applicable statute of limitations as of the date of the uploading of the CPF; however, such tolling will expire ninety (90) days after the date that the Claimant exits the Registry or ninety (90) days after the date that the Registry expires, as set forth below, whichever comes first.

6. Claimants who participate in the Registry commit to filing any action relating to Zantac or any ranitidine products, if at all, before this Court in MDL No. 2924. Claimants within the Registry either shall file their complaints in any federal court and not oppose transfer to the MDL, or may file their complaints directly in the MDL pursuant to the as-entered Direct Filing Order (Pretrial Order #11). Claimants further commit, to the extent that they file an action, to name only those defendants that they have a good faith belief marketed or manufactured Zantac or ranitidine products that such Claimants ingested or that they in good faith believe they may have a valid claim against for other reasons. The requirement

to file in a federal court shall not be applicable to actions as to which a federal court would lack diversity jurisdiction.

7. The Court expects that discovery will proceed in a timely and efficient manner, the specifics of which will be set out in subsequent orders. If this Court should find it appropriate to order case-specific discovery before a *Daubert* ruling on general causation, the only cases that will be considered for any initial phases of case-specific discovery will be filed cases and claims that are listed in the Registry. By participating in the Registry, a Claimant consents to having his or her claim selected for initial phases of case-specific discovery. If selected for case-specific discovery, the Claimant shall either file his or her action or exit the Registry within thirty (30) days of selection.

8. The Registry will expire thirty (30) days after the Court issues a decision on *Daubert* motions directed to the issue of general causation. After expiration, the Registry will remain accessible for purposes of review and supplementation.

9. The parties agree that the Registry process is being created with the intent to trigger expiration of the Registry and associated tolling upon entry of an Order ruling upon *Daubert* motions directed to general causation. The Court will set a schedule for such *Daubert* motions in a future Order, but expects the parties to work diligently to obtain discovery relevant to such motions. However, if *Daubert* motions are not fully briefed within eighteen (18) months of the entry of this Order, then any Defendant may, at its sole option, terminate the tolling agreement with respect to the claims tolled against that Defendant. If that Defendant decides to terminate the Tolling Agreement, then tolling shall expire ninety (90) days after that Defendant provides notice of that decision.

10. The purpose of the Registry is to encourage Plaintiffs' counsel with unfiled claims to register these claims, although registration is not mandatory. However, failure to provide important information within the applicable deadlines noted (as detailed in Paragraph 11), absent good cause shown, will result in exclusion of the case from the Registry, and inability to partake in any benefits associated with the Registry including but not limited to tolling of the statute of limitations, cost sharing with respect to obtaining medical records and other documentation, federal court orders facilitating discovery, and other benefits that the parties may negotiate or decide to extend to those Plaintiffs and Claimants who have filed their cases or claims in federal court or in the Registry.

11. The parties have agreed to the creation of the Registry in contemplation of the mutual benefits to Plaintiffs and Defendants alike of robust participation in the Registry, while simultaneously recognizing that registrations must be undertaken in good faith and be complete to be useful for data analytics. Claimants who fail to submit complete CPFs and accompanying documentation will receive notice of any incomplete, presumptively erroneous or missing information, in a manner agreed to by the parties. By registering, the individual and his/her counsel agree that if important information remains incomplete or missing, the matter will be referred to Plaintiff's counsel or a vendor at Plaintiffs' cost in an attempt to gather the required information. Claimants who fail to cooperate may be subject to removal from the Registry and the loss of benefits associated therewith. If a claim is removed from the Registry, then tolling for that claim shall expire ninety (90) days after the claim is removed from the Registry.

Additional Terms

1. One of the benefits extended to Claimants who participate in the Registry, as well as filed Plaintiffs, is assistance in obtaining certain documents that reflect use of the product or diagnosis of the alleged injury. The appointed counsel for Plaintiffs and Defendants will retain selected vendor(s) to request and obtain records for each individual who has completed a CPF, whether the individual has filed a claim in the MDL or is a Registry claimant who has not yet filed a claim. The vendors will be directed to obtain a medical record sufficient to evidence an initial diagnosis of cancer (or other alleged physical injury). In addition, the vendors will be directed to seek certain documents evidencing proof of usage of Zantac and/or ranitidine products potentially including, but not limited to, prescription records, pharmacy loyalty rewards program records and other records of usage, as agreed upon by the parties. It is anticipated that some filed Plaintiffs and unfiled Claimants will submit affidavits as documentation of proof of usage of Zantac and/or ranitidine products in the event that other documentation is not available. Individuals who do not allege cancer or other diagnosed physical injury, but instead allege a medical monitoring claim without an underlying, diagnosed physical injury, are not eligible for the records retrieval program described in this paragraph.

2. To register for access to the LMI Exchange census platform, a representative for each Plaintiffs' law firm will need to complete a Registration Form, which is available at www.lmiweb.com/ranitidineregistration. Once the Registration Form is submitted, LMI will provide access credentials to each authorized user. The LMI Exchange platform can be accessed at www.lmi-med.com. Submission guidelines for the ICF and CPF will be provided by LMI and will be available on www.lmi-med.com. For technical support,

Plaintiff firms may contact David Stakes (david.stakes@lmiweb.com) or call 440-484-2030; defense firms may contact Amber Mishler (amber.mishler@lmiweb.com) or call 440-684-8547.

3. The ICF, CPF, and any accompanying records shall be deemed served on Defendants on the date they are made available to them electronically through the LMIExchange platform. No paper service will be permitted.

4. Plaintiffs and Defendants, through authorized persons acting on their behalf, shall each pay 50% of the cost for said vendors, including but not limited to the chosen ICF/CPF repository and chosen medical record retrieval company(ies).[2] The agreement with the hosting platform and vendors shall contain strict confidentiality provisions.

5. As of the date the Registry expires, Claimants shall elect whether to file their claims, and provide notice to Defendants thereof. Further, Registry participants shall be obligated to supplement their CPFs in a manner to be later agreed by the parties. Registry participants and Plaintiffs will have forty-five (45) days from the date the Registry expires to supplement their CPFs. Failure to supplement the CPF within forty-five (45) days, absent good cause shown, shall be subject to sanctions, up to and including dismissal of the case.

6. In return for completing CPFs and accompanying documentation for filed Plaintiffs and registered Claimants, the parties agree that Plaintiffs are not required to complete Plaintiff Fact Sheets at this time. The Court anticipates that one benefit of the CPF is that the Court will have better information to tailor individual-specific discovery, including Plaintiff and Defendant Fact Sheets and motion practice in light of the data analytics it yields. While

---

[2] For costs allocated to Defendants under this paragraph, it is expected that defense leadership will establish a proportional cost-sharing arrangement among all Defendants.

the Court recognizes that if only a certain number of cases are filed after the Registry expires this benefit may not be realized; if this litigation is as large as Plaintiffs project it may be, analytics will allow the Court to use sampling mechanisms to determine subsequent discovery mechanisms necessary to ensure the parties are able to most efficiently gather the information needed to advance this litigation.

7.  In order to effectuate a dynamic, workable census procedure, the Court anticipates the parties may need to revise or modify the ICF and the CPF, as well as the vendor software interface application as the program is established.  For convenience and efficiency, the Court hereby authorizes Mike McGlamry and Adam Pulaski on behalf of Plaintiffs and interim Defense Leadership on behalf of Defendants to negotiate and agree to such revisions or modifications, with the assistance of Special Master Jaime Dodge.  If the parties and Special Master are in agreement, the clarification or modification may be implemented without the need for supplemental Court approval.

8.  Nothing in this Order or the parties' participation in the census process shall impact any party's rights or positions, including with respect what evidence constitutes sufficient proof of usage or injury and with respect to any future discovery, or scope of said discovery, such as future plaintiff/defense fact sheets or document production, except to the extent that it is expressly set forth herein.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 2nd day of April, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

<u>**IDENTIFYING INFORMATION:**</u>

Name: _____

DOB: _____

SS# (last four digits): _____

COUNSEL INFORMATION:

1.Counsel responsible for completion of this form:
• Name:_____
• Law Firm:_____
• Best Phone Number:_____
• E-mail:_____

2.If the plaintiff is represented by any other lawyer/law firm which has submitted an application for leadership, please identify all:
• Name:_____Law Firm:_____

<u>**MANDATORY QUESTIONNAIRE REGARDING ALLEGED ZANTAC (RANITIDINE) INJURIES:**</u>

State of Residence: **_____**

**Age:** _____

1.  Did you use prescription Zantac?  Yes _____      No _____
2.  Did you use prescription ranitidine (generic Zantac)?  Yes _____    No _____
3.  Did you use over the counter Zantac?  Yes _____      No _____
4.  Did you use over the counter ranitidine (generic Zantac)?  Yes _____      No _____

5.  Approximate date you **started** taking Zantac/ranitidine products (month/year): _____

    Approximate date you **stopped** taking (month/year): _____

6.  If the plaintiff is alleging a physical injury, indicate the plaintiff's alleged injury(ies) the plaintiff claims were caused by Zantac/ranitidine usage:

    ☐ Bladder Cancer               ☐ Ovarian Cancer
    ☐ Breast Cancer                ☐ Pancreatic Cancer
    ☐ Colorectal Cancer            ☐ Uterine Cancer
    ☐ Esophageal Cancer            ☐ Stomach Cancer
    ☐ Intestinal Cancer            ☐ Testicular Cancer
    ☐ Kidney Cancer                ☐ Death Related to Cancer
    ☐ Liver Cancer                 ☐ Other (please describe): _____
    ☐ Lung Cancer

    Approximate date of diagnosis (month/year): _____  (for each physical injury alleged)

7. If the plaintiff has not sustained a physical injury, please indicate the type of claim(s) that plaintiff is asserting:
- ☐ Medical Monitoring
- ☐ Economic Loss
- ☐ Other (please describe): _____

**For Filed Cases:**
8. Case name: _____
9. Case number: _____
10. Name of the court in which the complaint was initially filed: _____

11. Proof of Physical Injury:
- Medical diagnosis records: [check one]
  - o received;
  - o requested but none yet received (approximate date of request or first request);
  - o not yet requested
- Attached proof document:  [check one]
  - o medical diagnosis record attached;
  - o other medical record or third-party document attached;
  - o client certification of diagnosis and approximate date (year and month, as best the client can recall);
  - o letter attached from counsel (with approximate date on which first records request was made and explaining why client certification is also not available at this time)

12. Proof of Use:
- Proof of Use/ Purchase Records: [check one]
  - o received;
  - o some or all records have been requested but none yet received (approximate date of request or first request); or
  - o no request for records yet submitted
- Attached proof document:  [check one]
  - o Proof of purchase record attached;
  - o  medical record showing prescription attached;
  - o  other medical record showing use attached – e.g. self-report of use to doctor or hospital;
  - o client certification regarding Zantac use attached; or
  - o  letter attached from counsel explaining why no documentation of alleged use is available at this time

**For Unfiled cases:**
13. Proof of Physical Injury
- I have obtained at least one medical record showing diagnosis of this client
- I have requested medical records for this client, but not yet received the documents
- I am still investigating this client's allegations, and therefore have not requested records
- I am considering enrolling this client in the Registry, and therefore have not yet requested records in order to ensure I minimize his/her costs in this litigation

14. Proof of Use
- I have obtained proof of use records for this client
- I have requested proof of use records for this client
- I anticipate there may be ways to locate proof of use, but am still working with the client to determine which avenues may be most effective given his/her particular usage pattern and the duration for which the relevant third-parties hold this data
- I am considering enrolling this client in the Registry, and therefore have not yet requested records in order to ensure I minimize his/her costs in this litigation

**EXHIBIT B**

**ZANTAC (RANITIDINE) CENSUS PLUS**

## A. CASE DETAILS

1.  Has this case been filed?

<u>If Yes:</u>
2.  Case name: _____
3.  Case number: _____
4.  Name of the court in which the complaint was initially filed: _____
5.  Filing date of the complaint: _____
6.  Named plaintiff(s) in the complaint:
    a.  <u>Zantac User</u>: _____
    b.  <u>Derivative Plaintiff (spouse, etc.)/ Other</u>: _____
7.  Named defendant(s) in the complaint: _____
8.  Name of the counsel responsible for completion of this form, firm name, address, phone number, and email address: _____
9.  Other firm(s) representing the plaintiff(s), address, phone number, and email address:
    _____

<u>If No:</u>
10. Was counsel retained prior to the date the court appointed the PSC?  Yes/ No
        If no, select the year and quarter of retention (from dropdown)
11. Claimant (Zantac user): _____
12. Derivative claimants (spouse, etc.):_____
13. Anticipated defendant(s) based on investigation to date: _____
14. Name of the counsel responsible for completion of this form, firm name, address, phone number, and email address: _____
15. Other firm(s) representing the plaintiff(s), address, phone number, and email address:
    _____

## B. ZANTAC USER INFORMATION[1]

16. Any alias used from start of Zantac usage: _____
17. Date of birth: _____
18. Last 4 of SSN: _____
19. Current Address: _____City: _____ State: _____  Zip: _____
20. Phone: _____
21. Email: _____
22. What is your sex?  ☐ Female   ☐ Male   ☐ Other
23. Marital status [drop down menu – single, married, divorced, separated, widowed]
24. Do you have children?  ☐ Yes   ☐ No
    a.  If yes, how many? _____

---

[1]     For questions in this section directed to "you," please provide responses for the Zantac user.

25. Please provide your occupation(s) and dates of employment: _____

26. Have you ever filed for bankruptcy? ☐ Yes  ☐ No
    a.   If yes, list year and state of filing: _____

27. Is the Zantac user deceased? ☐ Yes  ☐ No

28. Is this claim being brought by a representative for the Zantac user? ☐ Yes  ☐ No.

If yes:
    a.   Reason for representative (dropdown: minor, incapacitated, or deceased)
    b.   Name of representative: _____
    c.   Relationship of the representative to the Zantac user: _____
    d.   Representative's date of birth: _____
    e.   Representative's Social Security No. (last 4):   _____
    f.   Representative's Phone: _____
    g.   Representative's Email: _____
    h.   Address of Representative: _____ City: _____ State: ____ Zip: _____

## C.  ZANTAC USAGE INFORMATION

29. Approximate FIRST use of Zantac: _____(month) _____ (year)

30. Approximate LAST use of Zantac: _____(month) _____ (year)

31. State(s) of residence during Zantac use: _____ Appx. Dates (month/year): _____

32. Condition(s) that prompted the use of Zantac: [drop down menu with conditions]

33. Identify ALL Zantac products used to the best of your present recollection:

| | | |
|---|---|---|
| ☐ Zantac (Injection) | ☐ Ranitidine Suspension | ☐ Ranitidine Capsule |
| ☐ Zantac (Syrup) | | ☐ Other Brand/Generic: |
| ☐ Zantac (Tablets and Capsules) | ☐ Ranitidine Syrup | _____ |
| ☐ Ranitidine Injection | ☐ Ranitidine Tablets and Capsules | |

For each product, the following questions will appear:
    a.   Identify the dosage(s) used [drop down menu with dosages and a do not recall option]
    b.   Duration of usage, to the best of your present recollection (approximate month/year to month/year, or year started/stopped if month is not recalled)
    c.   Frequency of usage: ☐ Daily  ☐ Weekly  ☐ Occasional  ☐ Periods of Non-Use (at least 3 months without use)  ☐ Other (describe): _____
    d.   How did you obtain it? ☐ Prescription ☐ Over the counter ☐ Both

If Prescription:
    e.   List prescribing doctor(s) and address(es): _____
    f.   Do you have prescription record(s)?     ☐ Yes    ☐ No
    g.   If yes, upload record(s).     If no, were records requested through the Registry vendor or by counsel directly?  [checkbox with month/year]
    h.   Might you have used your health insurance to purchase your prescription? ☐ Yes  ☐ No
        i.   If yes, please identify insurer: _____

If OTC:
    i.   Was **over-the counter** Zantac recommended by a health care provider?
        ☐ Yes  ☐ No     If yes, identify the physician(s) or provider(s) and address: _____

    j.  Name and address(es) of pharmacy(ies)/stores/online sellers where **over-the-counter** Zantac was purchased:_____

        1)  Do you have a loyalty or rewards card at the pharmacy or other place of purchase? ☐ Yes ☐ No

        2)  If yes, please check the appropriate box:
- ☐  Records requested through the Registry vendor on [month/year];
- ☐  Records requested by counsel directly on [month/year]; or
- ☐  Counsel anticipates no records exist.

        3)  Do you have any record(s) showing any of your purchases? ☐ Yes ☐ No
           If yes, upload record(s).

        4)  Might you have used your health savings account, etc. to purchase your **over-the-counter** medication?
           ☐ Yes ☐ No  If yes, please identify plan(s): _____

For Both OTC and Rx:

    k.  Was Zantac used/administered in a hospital or in-patient facility?  ☐ Yes ☐ No
        If YES, describe use: ☐ Oral ☐ Intravenous ☐ Injection

    l.  Do you have any medical records reflecting your use of Zantac? ☐ Yes ☐ No.
        i.  If yes, upload record(s).
       ii.  If no (select box and type in date):
          1.  records requested through Registry vendor on __; or
          2.  records requested by counsel/ counsel's vendor on or about __;
          3.  records not expected to exist.

    m.  Do you have any records reflecting your purchase of Zantac? ☐ Yes ☐ No
       iii.  If yes, upload record(s).
       iv.  If no (select box and type in date):
          1.  records requested through Registry vendor on __; or
          2.  records requested by counsel/ counsel's vendor on or about __;
          3.  records not expected to exist.

## D. PHYSICAL INJURY INFORMATION

1.  Risk Factors  [drop-down menu with common cancer risk factors, e.g, smoking]
2.  Did you experience wage loss as a result of your injury(ies)? ☐ Yes ☐ No
      If yes, please identify the lost wages:_____
3.  Were you diagnosed with any type of cancer before you began using Zantac? ☐ Yes ☐ No
      If yes, please identify the type(s) of cancer and date(s) of diagnosis: _____
4.  Indicate the user's alleged injury(ies) the plaintiff(s) claims were caused by Zantac/ranitidine usage:

| | |
|---|---|
| ☐ Bladder Cancer | ☐ Ovarian Cancer |
| ☐ Breast Cancer | ☐ Pancreatic Cancer |
| ☐ Colorectal Cancer | ☐ Uterine Cancer |
| ☐ Esophageal Cancer | ☐ Stomach Cancer |
| ☐ Intestinal Cancer | ☐ Testicular Cancer |
| ☐ Kidney Cancer | ☐ Death Related to Cancer |
| ☐ Liver Cancer | ☐ Other: _____ |
| ☐ Lung Cancer | |

For each cancer/ injury marked, the following questions will be shown:

- a. Initial Diagnosis Date: _____
- b. Stage of Cancer at Diagnosis: _____
- c. Stage of Cancer currently: _____
- d. Do you have a family history (parents, grandparents, or siblings) of the identified cancer?
  ☐ Yes  ☐ No       If yes, please identify relative:  [drop down menu]
- e. Risk Factors for specific cancer alleged [drop-down menu]

5. Check one:
   - a. I have uploaded the isolated medical record(s) showing initial diagnosis and date of initial diagnosis.
   - b. The medical records were ordered by counsel directly, beginning in _____.
   - c. The medical records are being ordered through the registry vendor, and were requested on: _____

6. Provide the name(s), specialty (general practitioner; oncologist; or other), address(es) and phone number(s) of your treating physician(s) or healthcare professional:
   _____


## CERTIFICATION

The Zantac user must sign and date the form below (online certification):

I declare under penalty of perjury that the following is true and correct to the best of my recollection:
I _____ingested Zantac and, to the best of my knowledge, information and belief, I was diagnosed with cancer after I first began using Zantac.

Date: _____ Signature: _____
Name: _____

*Alternative if the case was brought by a representative:*
The Zantac user's representative must sign and date the form below (online certification):

I declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief: _____ (Zantac user) ingested Zantac and was diagnosed with cancer after he/she first began using Zantac.

Date: _____ Signature: _____
Name: _____