# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)     MDL NO. 2924
PRODUCTS LIABILITY     20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO: ALL CASES**

**PRETRIAL ORDER # 20**
Order Establishing the Plaintiffs' Leadership Structure,
Appointing Leadership Members and Designating Leadership Duties
and Responsibilities

On May 6 and 7, 2020, the Court held interviews of sixty-two (62) applicants for leadership positions in this multi-district litigation (MDL). The Court, having reviewed all submissions by counsel, including all applications for leadership positions pursuant to PTO # 1, all disclosures and certifications submitted pursuant to PTO #16, and all initial census data submitted pursuant to PTO #15, and having considered the interviews conducted by videoconference, due to the inability of the Court to conduct the interviews in person in light of the coronavirus pandemic, issues this Order to, among other things, (1) establish the Plaintiffs' leadership structure; (2) appoint the Plaintiffs' leadership members; and (3) designate the Plaintiffs' leadership duties and responsibilities.

**I.    PLAINTIFFS' LEADERSHIP**

The Court is grateful to all counsel who had the interest and took the time to apply for leadership positions through their written submissions and oral presentations. It is an enormous personal commitment of time, dedication and resources to lead an MDL of this size and nature. There were many well-qualified candidates for leadership positions and choosing among the

applicants was a difficult task. In doing so, the Court has considered many factors, including the individual applicant's skill, experience, background, ethical standards, professionalism, collaboration, other leadership positions, and reputation earned from colleagues and judges in other litigation.

The disclosures submitted by the leadership applicants provided the Court with the necessary added assurance that the applicants did not have any conflicts that would compromise their ability to carry out the important role of serving in a leadership role in this litigation. The disclosures also further the goal of instilling transparency in the overall process of managing this case and, thereby, promotes confidence in the attorneys selected to act on behalf of so many others who will rely greatly upon their good judgment and fair dealing. As indicated at the hearing, the Court found no issues involving any actual or perceived conflicts from the disclosures. For purposes of transparency and informing the ongoing discussion of financial disclosures, the Court further notes that no applicant disclosed any third-party litigation financing.

In addition to the individual applicant's profile, the Court also considered the depth and quality of the applicant's firm, the experience and qualifications of any co-counsel, and the depth and quality of co-counsel's firm. In so doing, the Court sought to draw not only from the many prominent nationally known firms that sought leadership, but also from smaller firms as well as newer firms, recognizing that each type of firm brings unique and different capacities to the litigation.

The Court also sought to appoint a diverse leadership team that is representative of the inevitable diversity of the Plaintiffs in this case, and a team that affords younger and slightly less experienced attorneys an opportunity to participate in a leadership role in an MDL. The Court

sought to create a team that would collectively bring to bear both wisdom and judgment, and also new approaches and ideas. The Court was particularly impressed by the number of applicants who have started their own firms, especially the number of female founding partners who applied for roles in this litigation — while also noting that at only 31% female applicants, much work remains to be done to give judges an applicant pool that reflects the diversity of not only our society but our profession, particularly at the senior levels of leadership. So too, the Court noted that only a small subset of the applicants identified as non-Caucasian, and that no attorneys identified as LGBTQ or disabled, underscoring the breadth of these continuing challenges. However, quantitative metrics are only one measure. Through the interview process, the applicants displayed a remarkable diversity of life experiences, whether as veterans, immigrants, or individual life stories not easily categorized here but which the Court values. The Court hopes that as the litigation moves forward, the leadership team will endeavor to build on the diversity of its team. The Court also hopes that all counsel and parties will be mindful in using this MDL to provide an opportunity for a broader array of attorneys to have experiences that position them to take on more senior roles in future MDLs.

The Court further recognizes the importance of ensuring adequate representation in the leadership team for the full range of cases currently pending in the MDL and anticipated to be filed in the MDL, as reflected in the initial census data, pursuant to PTO #15. Specifically, the Court sought to ensure appropriate representation of anticipated economic injury putative class action cases on behalf of consumers and third-party payors; medical monitoring cases; as well as the range of personal injury/wrongful death cases reflected in the census. The Court recognizes that these needs may change as the MDL advances, and will continue to monitor to ensure that the various types of claimants are being appropriately and adequately represented.

The Court hopes and assumes that counsel appointed to leadership positions will take full advantage of the range of talent among other counsel, whether through the formation of appropriate subcommittees or otherwise — and that other counsel, including those who applied for leadership positions, will provide assistance as appropriate. In particular, the Court believes that certain staffing decisions should be left to its Lead Counsel, to ensure the leadership team will function well together — with both creative and diverse ideas, and yet a common vision. The Court hopes the Lead Counsel will consider drawing upon the resources of the many excellent firms not selected in this order as they build those subcommittees, in furtherance of their vision for the litigation. The Court will consider additional Steering Committee appointments as the litigation advances, recognizing the work performed by subcommittee members. The quality of the litigation will be greatly enhanced by the collective input of the talent of all of the attorneys in the litigation, guided and supported by the leadership team. Many attorneys gain invaluable experience and earn outstanding reputations from the work that they contribute to an MDL, without any formal leadership position, and this does not go unnoticed by their colleagues and the Court.

The Court was advised by certain applicants that the work of more junior attorneys can often be behind-the-scenes, such that neither the Court nor senior leadership is aware of those attorneys' contributions — and thus senior leadership are unable to recommend them when they apply for leadership positions in future MDLs. The Court recognizes there are similar challenges on the defense side. This Court will look to its leadership team — that appointed here for the Plaintiffs, and that which it anticipates appointing for the defendants — to be mindful of how they will ensure that junior attorneys are recognized for their contributions in this MDL. More broadly, the Court takes this opportunity to advise all parties of its preference that the attorneys

actually negotiating a particular issue, drafting a brief or proposed order, or dealing with a specific matter be available to speak to that matter in court — a structure the Court hopes will further facilitate opportunities for counsel at all levels.

## II.   PLAINTIFFS' LEADERSHIP STRUCTURE

The Court puts the following leadership structure in place based on all of the available information that the Court has at this time.  The Court recognizes it is appropriate to proceed with the adoption of a structure for leadership, and to appoint counsel to those positions, notwithstanding the many additional cases that continue to be transferred to and direct filed in this MDL.  If the composition and/or numerosity of cases in this MDL changes significantly throughout the litigation, the Court recognizes that it may need to revisit or modify the structure of leadership and/or specific appointments, as more fully described below.  The Court believes in a centralized framework that avoids disadvantages of an overly elaborate infrastructure, provides ample resources for vigorous prosecution, delivers strong and flexible leadership, and encourages counsel to avoid unnecessary duplication of efforts and to control fees and expenses in this litigation.  To those ends, the Court finds that Plaintiffs' leadership should be structured as follows, which includes a brief description of the leadership duties and responsibilities (with a more detailed description set forth in Section B below):

   a) **Co-Lead Counsel**

The Court appoints four (4) Co-Lead Counsel for all economic loss, medical monitoring and injury/wrongful death cases (collectively, "Lead Counsel").  Lead Counsel will have the duties outlined in the MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL Fourth") Section 10.221, which include formulating (in consultation with other counsel) and presenting positions

on substantive and procedural issues during the litigation. The authority, duties and responsibilities of Lead Counsel are more specifically set forth in Section B, below.

### b) Steering Committee

The Court establishes a Steering Committee for all economic loss, medical monitoring, and injury/wrongful death cases. The Steering Committee will have the duties outlined in the MANUAL FOR COMPLEX LITIGATION (FOURTH)("MCL Fourth") Section 10.221, which include preparing briefs or conducting portions of the discovery program. The Steering Committee is established to ensure that all group members' interests and positions are represented in decision making.

### c) Plaintiffs' Liaison Counsel

The Court previously appointed Francisco Maderal as the Plaintiffs' Liaison Counsel, in PTO #5. Plaintiffs' Liaison Counsel will be responsible for facilitating communications with the Court and counsel in this action. Liaison counsel will also assist all counsel in complying with the rules and procedures of this Court. In addition, Mr. Maderal will serve in an ex-officio capacity on the Steering Committee; in this role he will have the same responsibilities as all other members of the Steering Committee.

### d) Leadership Development Committee

This Court is keenly aware of the concerns raised in recent years about the challenges faced by less experienced attorneys in obtaining leadership appointments in MDL proceedings. While this Order is not the time or place for an exhaustive discussion of this issue, suffice it to say that this Court is sensitive to these concerns, as well as the need to have more experienced MDL practitioners lead and populate steering committees to adequately represent the interests of plaintiffs in large, complex and costly MDL matters. The Court views these concerns as

complimentary, rather than mutually exclusive. In an attempt to balance the needs of this MDL, as set forth below, this Court hereby establishes a Leadership Development Committee (LDC).

The LDC consists of attorneys who applied for leadership positions in this MDL, but whom the Court did not select for appointment to the PSC. The Court was impressed by the insights of each of these applicants and sees the potential in each of them to become leaders within the MDL bar. The Court believes these attorneys will benefit from the mentorship and experience gained from participation in a large and complex MDL, and that the MDL will equally benefit from their enthusiasm and fresh perspective. The attorneys appointed to the LDC, most of whom have not previously been appointed to an MDL steering committee, shall be mentored by and work with those attorneys appointed to the PSC. It is the Court's expectation that the PSC members will actively mentor and work closely with the attorneys appointed to the LDC so they have the opportunity to play a meaningful role in various aspects of this MDL, including subcommittee assignments, and thereby gain further experience in preparation for future service on steering committees.

The Court also directs that Special Master Dodge shall meet periodically with LDC members individually, and with the Co-Chairs of the LDC, to ensure that they are receiving appropriate opportunities for their ability and skills, including the opportunity to present before this Court. To the extent that any Order of this Court conflicts with the ability of the LDC to effectuate the Court's intent in this regard — for example, limitations that may be imposed through the anticipated common benefit order on staffing and travel, or the number of presenters at hearings — Lead Counsel may request individual waiver of these restrictions, which the Special Master is hereby granted authority to approve in her discretion without the need for future Order of this Court.

A.  **Plaintiffs' Leadership Appointments**

The Court makes the following appointments:

*Lead Counsel*:

Tracy A. Finken
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 735-1130
Email: tfinken@anapolweiss.com

Robert C. Gilbert
KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 384-7269
Email: gilbert@kolawyers.com

Michael L. McGlamry
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Telephone: (404) 523-7706
Email: efile@pmkm.com

Adam Pulaski
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Telephone: (713) 664-4555
Email: adam@pulaskilawfirm.com

*Steering Committee:*

Rosemarie Riddell Bogdan
MARTIN, HARDING & MAZZOTTI
1222 Troy-Schenectady Road
PO Box 15141
Albany, NY 12212
Telephone: (518) 862-1200
Email: rosemarie.bogdan@1800law1010.com

Mark J. Dearman
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Email: mdearman@rgrdlaw.com

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 South Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Email: beth@feganscott.com

Marlene J. Goldenberg
GOLDENBERGLAW, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 333-4662
Email: mjgoldenberg@goldenberglaw.com

Roopal P. Luhana
CHAFFIN LUHANA LLP
600 3rd Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

Ricardo M. Martinez-Cid
PODHURST ORSECK, P.A.
SunTrust International Center
One SE 3rd Avenue, Suite 2300
Miami, FL 33130
Telephone: (305) 358-2800
Email: rmcteam@podhurst.com

Lauren S. Miller
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, AL 35205
Telephone: (205) 328-2200
Email: lmiller@corywatson.com

Melanie H. Muhlstock
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Telephone: (516) 466-6500
Email: mmuhlstock@yourlawyer.com

Daniel A. Nigh
LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7013
Email: dnigh@levinlaw.com

Carmen S. Scott
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Telephone: (843) 216-9160
Email: cscott@motleyrice.com

Mikal C. Watts
WATTS GUERRA LLP
Four Dominion Drive
Building Three, Suite 100
San Antonio, TX 78257
Telephone: (210) 447-0500
Email: mcwatts@wattsguerra.com

Sarah N. Westcot
BURSOR & FISHER, P.A.
2665 South Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Email: swestcot@bursor.com

Conlee S. Whiteley
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
Email: c.whiteley@kanner-law.com

R. Brent Wisner
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024
Telephone: (310) 207-3233
Email: rbwisner@baumhedlundlaw.com

Frank Woodson
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
PO Box 4160
Montgomery, AL 36106
Telephone: (334) 269-2343
Email: frank.woodson@beasleyallen.com

*Leadership Development Committee:*

Paige Boldt
WATTS GUERRA LLP
Four Dominion Drive
Building Three, Suite 100
San Antonio, TX 78257
Telephone: (210) 447-0500
Email: pboldt@wattsguerra.com

Je Yon Jung
MAY LIGHTFOOT, PLLC
3200 Martin Luther King Jr. Avenue SE
3rd Floor
Washington, DC 20032
Telephone: (202) 918-1824
Email: jjung@maylightfootlaw.com

Adam William Krause
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 250
Kansas City, MO 64112
Telephone: (816) 760-2700
Email: adam@krauseandkinsman.com

Nicola Larmond-Harvey
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Telephone: (727) 579-4500
Email: nicola@saunderslawyers.com

11

Bradford B. Lear
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65201
Telephone: (573) 875-1991
Email: lear@learwerts.com

All of the foregoing appointments are personal in nature. That is, although the Court expects that appointees will draw on the resources of their firms, their co-counsel, and their co-counsel's firms, each appointee is personally responsible for the duties and responsibilities that he or she assumes. However, if any counsel appointed to a leadership position leaves his or her firm during the course of this litigation, counsel must immediately notify the Court, at which time the Court may reassess counsel's role in a leadership position. If the Court allocates common benefit monies at the conclusion of the litigation, the Court may consider all firms with which counsel has been affiliated during the litigation and the contributions that each firm has made to the litigation. There should be no expectation that all benefits will be afforded to one firm or another.

The Court will consider a process for periodically evaluating leadership appointees' performance and commitment to the tasks assigned, as well as the ongoing needs of the litigation. The Court anticipates that this evaluation will happen on an approximately annual basis; but this timing will be adjusted as circumstances warrant and at a time that minimizes any disruption to the litigation that might occur if changes were made to the team. In evaluating the leadership team, the Court will consider the amount of time counsel has devoted to the litigation and the resources counsel and/or his or her firm have contributed to the litigation, as well as whether any counsel is in arrears in his or her contributions, the ability of counsel to work collaboratively with other members of the leadership team and counsel not appointed to a leadership position and the commitment counsel has shown to the fair, just and efficient management of the case. The Court

12

will also periodically assess the needs of the litigation overall, including whether any additional or different resources are necessary for the Plaintiffs' leadership as the case progresses.

The Court declines to appoint an Executive Committee at this time; in lieu of such an appointment, the Court makes the following designations:

Roopal Luhana as the Chair of the ESI/Document Production Committee;

Ashley Keller as the Chair and Frederick Longer as Co-Chair of the Law & Briefing Committee;

Melanie Muhlstock and Carmen Scott as Co-Chairs of the Leadership Development Committee;

Daniel Nigh as the Chair of the Science & Experts Committee;

Mikal Watts as the Chair and Brent Wisner as the Co-Chair of the Bellwether & Trial Team.

The Court leaves designation of other committee co-chairs, subcommittee membership, and creation of any other committees to the full discretion of Lead Counsel, including the timing of such decisions. The Court also directs the Lead Counsel to consider what structure will be most useful with respect to state/federal coordination, and to report on its recommendation at an upcoming status conference.

### B.  Defining the Authority, Duties, and Responsibilities of Plaintiffs' Leadership

The specific duties to be undertaken by Lead Counsel, Liaison Counsel members of the Steering Committee, and Leadership Development Committee are as follows:

#### i.  Lead Counsel

Lead Counsel will be responsible for prosecuting any and all potential common benefit claims and class claims, as well as coordinating the pretrial proceedings conducted by counsel

13

for the individual Plaintiffs. With respect to the common benefit claims, class claims and coordinated pretrial proceedings, Lead Counsel shall:

    (a) determine (after consultation with members of the Steering Committee and other co-counsel as may be appropriate) and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of the Plaintiffs on matters arising during the coordinated pretrial proceedings;

    (b) coordinate the initiation and conduct of discovery on behalf of the Plaintiffs consistent with the requirements of Fed. R. Civ. P. 26, including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions, except that the discovery and motions initiated by the Defendants directed to or regarding named individual Plaintiffs will be handled by the attorney(s) for those individuals;

    (c) delegate specific tasks to other counsel in a manner to ensure that pretrial preparation for the Plaintiffs is conducted effectively, efficiently and economically;

    (d) enter into stipulations with opposing counsel necessary for the conduct of the MDL;

    (e) convene meetings of the Steering Committee or other subcommittees as necessary for the purpose of proposing joint action and discussing and resolving matters of common concern;

    (f) organize themselves and agree on a plan for conducting the MDL on behalf of all Plaintiffs;

    (g) assess members of the Steering Committee (including Liaison Counsel), Leadership Development Committee, and other counsel performing authorized common benefit

work common benefit payments into a Common Benefit "Shared Cost" Fund, in amounts and at times they determine to be necessary and appropriate in consultation with the Steering Committee, collect payments, maintain an account, pay generic expense, and account to the Steering Committee and the Court upon request as to the collection and use of such funds;

(h) brief and argue motions for the Plaintiffs and file opposing briefs and argue motions and proceedings initiated by other parties (except as to matters specifically directed to individual Plaintiffs and heir counsel) or designate the appropriate counsel to carry out these tasks;

(i) consult with and employ expert witnesses;

(j) maintain time and expense records for work performed, costs incurred and other disbursements made or any potential common benefit claim, proof of potential common benefit claim, and related matters on behalf of the Steering Committee, and report with reasonable regularity, in writing, to the Steering Committee, and Liaison Counsel, concerning expenses, disbursements, and receipts;

(k) monitor work performed by the Steering Committee, Leadership Development Committee, Liaison Counsel, subcommittee members and those whose work it has specifically authorized;

(l) perform all tasks necessary to carry out the functions of Lead Counsel and to properly coordinate Plaintiffs' pretrial activities;

(m) form task-specific subcommittees of counsel, as appropriate;

(n) authorize Plaintiffs' counsel to initiate case-specific motions and discovery;

(o) designate Plaintiffs' counsel authorized to attend hearings and depositions;

15

(p) conduct settlement negotiations on behalf of Plaintiffs, and enter into settlement agreements subject to Court approval;

(q) if there is a settlement, propose a plan of allocation;

(r) prepare and distribute periodic status reports to the Steering Committee, the Court, and the parties; and

(s) coordinate and communicate with Defendants' counsel with respect to the matters addressed in this paragraph.

No generic discovery or other common action or work in this litigation will be undertaken on behalf of the Steering Committee except at the direction or with permission of Lead Counsel.

### ii. Plaintiffs' Liaison Counsel

Plaintiffs' Liaison Counsel shall maintain up-to-date service lists of all Plaintiffs' attorneys involved in this MDL. Liaison Counsel shall ensure that all Orders entered by this Court and all papers filed by the Defendants are timely distributed to all Plaintiffs' counsel in the MDL and shall facilitate communication between Plaintiffs' counsel and the PSC, as well as other subcommittee members (including LDC) as directed by Lead Counsel. In addition, Liaison Counsel shall work with Lead Counsel in scheduling meetings of the PSC, keeping minutes of these meetings, appearing at Court noticed status conferences, and performing other necessary administrative or logistic functions for the effective and efficient functioning of the MDL, work with Defendants' counsel to create a single electronic document depository that will be used in both this MDL and related state and federal cases and assume any other duties delegated by Lead Counsel.

16

### iii. Steering Committee

Members of the Steering Committee shall consult with and operate under the direction of Lead Counsel in the prosecution of any and all potential common benefit claims and class claims, as well as coordinating the pretrial proceedings conducted by counsel for the individual Plaintiffs.

### iv. Committee Members

The Chairs and/or Co-Chairs of any subcommittee shall work under and at the direction of Lead Counsel in all aspects of their work in this MDL. Committee members, including those of the Leadership Development Committee, shall work under the direction of the Committee Chair(s) of their committee with respect to all committee work performed in this MDL and at the overall direction of Lead Counsel.

## III. CENSUS REGISTRY

In PTO #15, the Court ordered that the deadline for the first tranche of Census Plus Forms would be 60 days from the date of this Order. The Court hereby extends the deadline for submission of the Census Plus Forms for both filed and unfiled cases by 14 days. This extension shall only apply to those forms for cases filed in the MDL on or before May 22, 2020, or cases for which retention agreements are signed on or before May 22, 2020. Deadlines for cases filed or retained after May 22, 2020 are not extended by this Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 8th day of May, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE